**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KURT HUCKABEE, | ) | |
| individually and on behalf of all | ) | Case No. 2:11-cv-7657 |
| others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | CLASS ACTION |
| | ) | |
| v. | ) | |
| | ) | Filed Electronically |
| SOVEREIGN BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiff Kurt Huckabee ("Plaintiff"), through his undersigned counsel, files this Unopposed Motion for Final Approval of Class Action Settlement. In support of this motion Plaintiff avers as follows:

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiff, by and through his undersigned counsel, respectfully requests final approval of the proposed Class Action Settlement embodied in the Settlement Agreement that this Court preliminarily approved in its Order dated March 26, 2013 ("Preliminary Approval Order").[1] As set forth below, the settlement is fair, adequate and reasonable and satisfies all applicable requirements for final approval.

Pursuant to the Court's Preliminary Approval Order, the ATM Notices were displayed on the ATMs at Issue no later than April 10, 2013 and were removed no earlier than May 25, 2013.

---

[1] The Settlement Agreement was attached as Exhibit 1 to the Plaintiff's Amended Motion for Preliminary Approval of Class Action Settlement, Dkt. 20 ("Amended Preliminary Approval Motion").

Furthermore, the Full Notice of Certified Class Action Settlement was published on Class

Counsels' website – www.carlsonlynch.com – from April 10, 2013, through the present.[3]

      The last day to file objections to the Settlement was June 10, 2013.  This was also the last

day to request exclusion from the Class.  No objections have been lodged against the Settlement

by class members, and no class member has requested exclusion from the Settlement Class.[4]

## I.      BACKGROUND OF LITIGATION

      Class Representative, Kurt Huckabee, filed an action on December 15, 2011, alleging that

Sovereign Bank (the "Bank" or "Defendant") violated the Electronic Funds Transfer Act, 15

U.S.C. § 1693 *et seq.* ("EFTA").  Specifically, Plaintiff alleges that Defendant violated 15 U.S.C.

§ 1693b(d)(3)(C) which states, in relevant part:

      (C)  Prohibition on fees not properly disclosed and explicitly assumed by the consumer

      No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless—

      (i)      The consumer receives such notice in accordance with subparagraph (B) . . . .

In turn, Plaintiff alleges that Defendant violated the notice requirement set forth at subparagraph

B (15 U.S.C. § 1693(d)(3)(B)), to wit:

      (B)  Notice requirements

      (i)      On the machine

      The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.[5]

---

[3] *See* Declaration of R. Bruce Carlson in Support of Motion for Final Approval of Class Action Settlement ¶ 4 ("Carlson Declaration"), attached hereto as <u>Exhibit 1</u>.

[4] *See* Carlson Declaration at ¶¶ 6-8.

[5] The "On the machine" provision was repealed via the December 2012 Amendment to the Electronic Funds Transfer Act, Pub. L. No. 112-216, 126 Stat. 1590 (2012) (codified at 15 U.S.C. § 1693b(d)(3)(B)).

Plaintiff's Complaint described the alleged violation as follows:

> At the time of the above-described transaction, there was no notice posted in a 'prominent and conspicuous location on or at' the ATM operated by Defendant apprising consumers that a fee would be charged for the use of the ATM.  Indeed, the only posted notice at the ATM operated by Defendant relating to ATM fees is impossible to read with the naked eye.

> More specifically, the ATM at issue is a stand-alone ATM intended for drive through usage.  There is no signage at all on the front face of the ATM that is within a driver's field of vision when said driver pulls up to the ATM.  Instead, there is an obscure fee notice placed on a sign located on a pole to the side of the ATM.  The type size used in the notice is so small that it is impossible for the driver or any occupant of the vehicle using the ATM to read the notice with the naked eye from within the vehicle.

(Compl. ¶¶ 20-21.)

On February 16, 2012, Defendant filed an Answer to Plaintiff's Complaint.  The Parties ultimately executed a Class Action Settlement Agreement on or about August 1, 2012.  Pursuant to this agreement, the Parties have agreed to the certification of the following Class, for settlement purposes only:

> All persons who were not banking customers of Sovereign Bank and who were charged or assessed any transaction fee, including any "terminal owner fee", surcharge or ATM transaction fee of any kind, in connection with any electronic fund transfer or balance inquiry at any of the ATMs at Issue between December 15, 2010 and March 31, 2012.

On August 6, 2012, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement.  On October 25, 2012, this Court denied Plaintiff's motion without prejudice.  Plaintiff submitted his Amended Preliminary Approval Motion on December 28, 2012 to address issues identified by the Court.  A hearing was held on January 16, 2013.  After supplemental information was provided by Plaintiff, the Court granted preliminary approval on March 26, 2013.

II.     **THE TERMS OF THE SETTLEMENT**

In the interest of avoiding protracted and costly litigation, the Parties have agreed to a proposed settlement with the following basic terms:

(1)     Defendant has created a settlement fund in the amount of $87,747.00 to be disseminated on a *pro rata* basis to every Participating Class Member who submitted a claim after the dissemination of notice, with any individual Participating Class Member's share being capped at $100.00.  There are a total of 58,498 transactions at issue, resulting in $144,589.00 in ATM fees being collected by Defendant.

(2)     Defendant has also agreed that fifty percent (50%) of any unclaimed amount of the Settlement Fund will be donated, on a *cy pres* basis, in equal amounts to the Boys & Girls Clubs of America and Girls Hope of Pittsburgh.

(3)     Defendant has agreed not to oppose Class Counsel's application for attorneys' fees and allowable litigation costs and expenses in an amount up to thirty-five percent (35%) of the Settlement Fund.

III.    **MULTIPLE FEDERAL COURTS HAVE APPROVED ANALOGOUS PROPOSED  SETTLEMENTS OF CLAIMS ALLEGING VIOLATIONS OF THE EFTA'S ATM FEE DISCLOSURE REQUIREMENTS**

Federal District Courts have routinely approved analogous class settlements under the EFTA.  For example, settlements similar to the one proposed in this case have been recently approved in the following cases:  *Dragotta v. Northwest Bancorp, Inc.*, No. 09-cv-632 (W.D. Pa.) (Fischer, J.) (final approval granted); *Jackman v. Global Cash Access Holdings, Inc.*, No. 09-cv-897 (W.D. Pa.) (McVerry, J.) (final approval granted); *Nolf v. Allegheny Valley Bank of Pittsburgh*, 09-cv-645 (W.D. Pa.) (Bissoon, J.) (final approval granted);  *Polevoy v. Devon Bank*,

08-cv-4822 (N.D. Ill.) (Kennelly, J.) (final approval granted);  *Stone et al. v. Corus Bank, N.A.*, 08-cv-1746 (N.D. Ill.) (Bucklo, J.) (final approval granted);  *Anthony v. Fifth Third Bank (Chicago)*, 08-cv-4359 (N.D. Ill.) (Schenkier, J.) (final approval granted);  *Arbelo, et al. v. Charter One Bank*, 08-cv-1516 (N.D. Ill.) (Cox, J.) (final approval granted); *Escalante v. Lincoln Park Savings Bank*, 08-cv-6152 (N.D. Ill.) (Ashman, J.) (final approval granted);  *Bruner v. AmericaUnited Bank & Trust Company*, 08-cv-124 (N.D. Ill.) (Nolan, J.) (final approval granted);  and, *Marsh v. ATM Capital Management Inc.*, 07-cv-5808 (N.D. Ill.) (Coar, J.) (final approval granted).

There is also abundant recent authority regarding the propriety of similar settlements under an amendment to the Fair Credit Reporting Act designated as the Fair and Accurate Credit Transaction Act ("FACTA").  *See, e.g., Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241 (E.D. Pa. 2011) (final approval granted); *Klingensmith v. Max & Erma's Restaurants*, 2007 WL 3118505 (W.D. Pa. Oct. 23, 2007) (Lenihan, J.); *Sinatra v. Coventry Restaurant Systems, Inc d/b/a Hyde Park Steak House.*, 07-cv-445 (W.D. Pa.) (Schwab, J.); *Ehrheart v. Pro Nebraska, Inc. d/b/a Pro Image*, 07-cv-447 (W.D. Pa.) (Lenihan, J.); *Pivarnik v. Lamrite West, Inc. d/b/a Pat Catan's Craft Center*, 07-cv-321 (W.D. Pa.) (Schwab, J.); *Reed v. Whole Enchilada, Inc. d/b/a big Burrito Restaurant Group*, 07-cv-357 (W.D. Pa.) (Fischer, J.); *Curiale v. Hershey Entertainment & Resorts Company*, 07-cv-651 (M.D. Pa.) (Kane, J.); *Ehrheart v. Pfaltzgraff Factory Stores, Inc.*, 07-cv-01433 (E.D. Pa.) (Padova, J.); *Long v. Joseph-Beth Group, Inc.*, 07-cv-443 (W.D. Pa.) (Cercone, J./Hay, M.J.); *Carusone v. Joe's Crab Shack Holdings, Inc.*, 07-cv-320 (W.D. Pa.) (Lenihan, J.); *Palamara  v. Kings Family Restaurants*, 07-cv-317 (W.D. Pa) (Lancaster, J.); *Goldin v. Uni-Marts, LLC*, 07-cv-666 (W.D. Pa.) (Fischer, J.).  All of these cases were settled on terms similar to those in the proposed settlement that is now before this Court.

## IV.    CERTIFICATION OF A SETTLEMENT
##        <u>CLASS IS APPROPRIATE AND WARRANTED</u>

The benefits of the proposed Settlement can be realized only through the certification of a settlement class.  The Supreme Court of the United States has confirmed not only the viability, but the desirability, of such settlement classes.  *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).  So, too, have the federal courts of appeal.  *See, e.g.*, *In re Prudential Insurance Co. of America Sales Practices Litig.*, 148 F.3d 283, 316 (3d Cir. 1998) ("*Prudential II*"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).  In addition, when considering certification in the context of a settlement class, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009).

In cases such as this, involving issues of consumer protection, courts have consistently held that the use of the class action mechanism is "desirable and should be encouraged." *Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980); *Gordon v. Boden*, 586 N.E.2d 461 (Ill.App.Ct. 1991), *cert. denied.*, 506 U.S. 907 (1992) ("[i]n a large and impersonal society, class actions are often the last bastion of consumer protection").

### A.    <u>The Rule 23(a) Prerequisites Are Satisfied</u>

The four prerequisites of Rule 23(a) are that:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and,

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d. Cir. 2011).

### 1.    **Numerosity**

For a class action to be appropriate, the proposed class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  To meet this requirement, the class representative(s) need only show that "common sense" suggests that it would be difficult or inconvenient to join all the members of the class.  *In re Bell Atlantic Corp. Sec. Litig.*, [1995-96 Transfer Binder]  Fed. Sec. L. Rep. (CCH) ¶ 99,007, at 93,920 (E.D. Pa. Dec. 11, 1995).  While there is no precise number of putative class members that will ensure the numerosity requirement is met, a potential class exceeding forty members is generally considered sufficient. *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001); *see also Serventi v. Bucks Technical High Sch.*, 225 F.R.D. 159, 165 (E.D. Pa. 2004) (class contained at least forty-seven potential members); *Godshall v. The Franklin Mint Co.,* 2004 WL 2745890, at *2 (E.D. Pa. Dec.1, 2004) (proposed class consisted of 112 members); H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.05, at 3-25 (1992) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

Defendant acknowledges that there are thousands of transactions at issue.  Defendant does not contest numerosity in this instance and the existence of numerosity is readily apparent.

## 2.     Commonality

To maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "[C]ommonality is satisfied where common questions generate common answers 'apt to drive the resolution of the litigation.'" *Sullivan v. DB Investments, Inc.,* 667 F.3d at 299 (*quoting Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S.Ct. 2541, 2551 (2011)).

Here, Plaintiff's Complaint specifically lists the common issues implicated by his claims:

7

a. Whether, under 15 U.S.C. § 1693b(d)(3)(A) and 12 C.F.R. 205.16, Defendant was, at all relevant times, an automated teller machine operator that imposed a fee on consumers for providing host electronic fund transfer services to those consumers;

b. Whether Defendant complied with the notice requirements of 15 U.S.C. § 1693b(d)(3)(B) and 12 C.F.R. 205.16; and,

c. Whether Plaintiff and members of the class are entitled to statutory damages, costs and/or attorneys' fees for Defendant's acts and conduct.

*See* Compl. ¶ 35.

Courts analyzing commonality in the context of ATM fee notice statutory damage cases have uniformly found that the commonality requirement of Rule 23(a)(2) is satisfied. For example, in *Burns v. First Am. Bank*, the court stated:

> The proposed class is based on a common nucleus of operative facts-that is, Defendant charged each class member $2.50 for using ATMs S 1A5260 and S 1A5261 during the Class Period. Class members also share a common interest in the question of whether Defendant's fee notices violated EFTA. Because class members share common questions of law and fact, the commonality prong of Rule 23(a) is met.

2006 WL 3754820, *7 (N.D. Ill. Dec. 19, 2006); *see also, Mabary v. Hometown Bank, N.A.*, 2011 WL 5864325, *2 (S.D. Tex. Nov. 22, 2011) ("Plaintiff lists several issues that she has in common with her potential class members, including: whether [Defendant] was an automated teller machine operator; whether Defendant complied with the statutory notice requirements; and whether Mabary and the class members are entitled to statutory damages, costs, and/or attorneys' fees for Hometown's acts and conduct. Together these factors show commonality between the parties."); *Kinder v. United Bancorp, Inc.*, 2012 WL 4490874 (E.D. Mich. Sept. 28, 2012) (commonality requirement satisfied in EFTA case); *Campbell v. Hope Community Credit Union*,

2012 WL 2395180 (W.D. Tenn. June 25, 2012) (same); *Hart v. Guardian Credit Union*, 2011
WL 2434201 (M.D. Ala. June 16, 2011) (same).

        Thus the common questions alleged in Plaintiff's Complaint satisfy the commonality
requirement of Rule 23(a)(2).

        **3.**      **Typicality**

        Rule 23(a) requires that the claims of the representative party be "typical" of those of the
class.  Typical, however, does not mean identical, and factual homogeneity between the
representative plaintiff and all Class Members is not required.  *In re Warfarin Sodium Antitrust
Litig.*, 391 F.3d 516, 531-32 (3d Cir. 2004) ("typical" does not mean "identical"); *In re
Chambers Dev. Sec. Litig.*, 912 F.Supp. 822, 834 (W.D. Pa. 1995) (same).  "The heart of this
requirement is that the plaintiff and each member of the represented group have an interest in
prevailing on similar legal claims." *Seidman v. Am. Mobile Sys., Inc.*, 157 F.R.D. 354, 360 (E.D.
Pa. 1994).

        Here, the named Plaintiff's claims are typical of those of the Class because they derive
from an identical factual predicate, and they are based upon the same legal theory.  *See e.g.*, *Hart
v. Guardian Credit Union*, 2011 WL 2434201, * 2 (finding typicality where plaintiff's "legal and
factual circumstances do not appear to be materially unique to any other class members who
used these ATMs, and therefore, his claims arose from the same circumstances and are based on
the same legal theory").  Plaintiff's interests are co-extensive with those of the class, since every
class member claims injury resulting from the same uniform alleged misconduct by Defendant.
Because commonality and typicality are closely related, a finding of one often results in a finding
of the other.

Here, typicality is inherent in the class claims asserted.  All of the class members' claims arise from the common issue of whether Defendant violated the EFTA.  *See Campbell v. Hope Community Credit Union*, 2012 WL 2395180, *5 (holding plaintiff's claims are typical of class members' where "[l]ike all of the members of the class she seeks to represent, Plaintiff's claim is based on an alleged failure to provide statutory notice of the ATM fee"); *see also Burns v. First Am. Bank*, 2006 WL 3754820, *8 (finding typicality for EFTA class); *Flores v. Diamond Bank*, 2008 WL 4861511, *2 (same).  Accordingly, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4.    Adequacy of Representation

The fourth and final prerequisite of Rule 23(a) is that "the representative parties…fairly and adequately protect the interests of the class."  "[T]he inquiry has two purposes: 'to determine [1] that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, ... and [2] that there is no conflict between the individual's claims and those asserted on behalf of the class.'" *Larson v. AT & T Mobility LLC*, 687 F.3d 109, 132 (3d Cir. 2012) (*quoting In re Community Bank of Northern Virginia*, 622 F.3d 275, 291 (3d Cir. 2010)) (additional citation omitted).

Here, there are no conflicts of interest or other antagonisms between Plaintiff, on the one hand, and Class Members, on the other.  All are individuals with the mutual incentive to establish the alleged violation of EFTA.  All class members were allegedly impacted by the practices at issue in an identical manner, and all class members submitting a claim will receive the same relief from the settlement.  No objections to the settlement have been raised by class members.  Thus, the adequacy requirement of Rule 23(a)(4) is readily satisfied.

In addition, Plaintiff's counsel have provided fair and vigorous representation for the

Class.  Rule 23(g)(2) states: "When one applicant seeks appointment as class counsel, the court

may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)."  Rule

23(g)(1) requires that in appointing class counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the
> action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types
> of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Rule 23(g)(4) requires that "Class counsel must fairly and adequately represent the interests of

the class."  *See also Sheinberg v. Sorensen*, 606 F.3d 130, 132–33 (3d Cir. 2010) (explaining that

since 2003, the inquiry into adequacy of class counsel is governed by Rule 23(g)).  Plaintiff's

counsel have substantial experience in similar consumer class action litigation and have regularly

been deemed to be adequate class counsel.[6]

### B.    The Requirements Of Rule 23(b) Are Satisfied

Rule 23(b) provides in pertinent part:

> (b)    **Class Actions Maintainable.**  An action may be maintained as
> a class action if the prerequisites of subdivision (a) are satisfied and,
> in addition:
>
> \*\*\*\*\*
>
> (3)    the court finds that the questions of law or fact
> common to the members of the class predominate
> over any issues affecting only individual members,
> and that a class action is superior to other available
> methods for the fair and efficient adjudication of
> the controversy.

These requirements are satisfied here for settlement purposes.

---

[6] *See* Declaration of Bruce Carlson attached to the Amended Preliminary Approval Motion as Exhibit 2.

1.    **Common Questions Of Law And Fact Predominate Over Questions Affecting Only Individual Members Of The Class**

In *Amchem*, the Supreme Court noted that the Rule 23(b)(3) predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." 521 U.S. at 594.  The Supreme Court then noted that the predominance requirement is easily met in cases, such as this one, alleging a uniform violation of a consumer protection statute.  *Id.* at 2250.  The Third Circuit has indicated that claims alleging the violation of a consumer protection statute by way of standardized conduct are appropriate for class action treatment.  *See, e.g.*, *Prudential II*, 148 F.3d at 314.  Defendant does not oppose the issue for settlement purposes here.  Thus, this case meets the requirement.  *Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 252 (D.N.J. 1992); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724-25 (11th Cir. 1987); *Blackie v. Barrack*, 542 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

As described above, Plaintiff and the Class allege statutory injury by a common course of conduct.  These allegations of a common course of conduct "provide[] the 'single central issue'" required to ensure predomination of common questions over individual issues.  *In re Prudential Insur. Sales Practices Litig.*, 962 F.Supp. 450, 511-12 n.45 ("*Prudential I*") (citing numerous other cases).

Similarly, the damage issues in this case are especially well suited for class-wide resolution because every Class Member seeks the same quantum of statutory damages which is dependent upon a unitary demonstration of Defendant's alleged noncompliance with the ATM fee disclosure requirements of EFTA.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996); *see also Prudential I*, 962 F.Supp. at 516.

The *Burns* court discussed the predominance issue in an EFTA action seeking statutory damages as follows:

> [A] claim for statutory damages under EFTA does not require each class member
> to prove that he saw the notice on the machine, was confused by the notice on the
> machine or would not have proceeded with the transaction had he been aware that
> the actual charge would be $2.50.  Each class member's claim requires proof only
> that EFTA was violated. (internal citations omitted)  Plaintiffs claim that
> Defendant violated the notice provisions of EFTA when it posted a fee notice on
> its ATM machines that contradicted the on screen fee notice and did not represent
> the actual fee that class members were charged.  Whatever the ultimate merits of
> this claim, it will be decided predominately, if not entirely, based on common
> evidence of Defendant's conduct. (internal citation)  Likewise, any defense raised
> by Defendant under § 1693n(c) will depend on common issues involving
> Defendant's intent and its maintenance of procedures reasonably adapted to avoid
> a violation.  Accordingly, questions common to the class predominate over any
> questions affecting only individual members . . . . .

2006 WL 3754820, *9; *see also Mabary v. Hometown Bank, N.A.*, 2011 WL 5864325, *3

(common questions predominate over questions affecting individual members in the context of

an EFTA action); *Flores v. Diamond Bank*, 2008 WL 4861511, *3 (same).

Therefore, the predominance requirement is satisfied in this case.

### 2.     A Class Action Is The Superior Means To Adjudicate The Claims At Issue For Settlement Purposes

It is well-accepted that the class-action mechanism generally provides the superior

approach to handling statutory consumer protection claims.  *See, e.g.*, *Ingram v. Joe Conrad

Chevrolet, Inc.*, 90 F.R.D. 129, 133 (E.D. Ky. 1981).  Fed. R. Civ. P. 23(b)(3) lists the factors

pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the
> prosecution or defense of separate actions;  (B) the extent and nature of any
> litigation concerning the controversy already commenced by or against  members
> of the class;  (C) the desirability or undesirability of concentrating the litigation of
> the claims in the particular forum;  (D)  the difficulties likely to be encountered in
> the management of the class action.

All four of these factors support certification here for settlement purposes.

### a.     Class Members Have An Insufficient Interest To Justify Individual Lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective.  The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed.  *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). *See also Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d at 250-51.

Effective private enforcement requires mechanisms to aggregate these relatively small but important claims lest the relatively small stake of each individual consumer present an insurmountable hurdle to recovery.  Aggregate litigation is therefore indispensable if consumers are to play a role in deterring conduct identified by Congress as being generally harmful, and therefore serves as an important compliment to public and quasi-public enforcement procedures.

This consumer action against Defendant on behalf of ATM users presents many of these elements.  The class action mechanism is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner.  *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982).  The small claims for statutory damages in this case are such that class relief is the only realistic alternative to no relief at all for the vast majority of Class Members.  As one court has noted in the context of an EFTA action:

> It is well settled that individuals who may recover only nominal amounts may elect to forego lawsuits to protect their rights. Class actions address this problem

by aggregating these small claims, *Anchem Products, Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 2246-47, 138 L.Ed.2d 689 (1997); *Sanders v. Jackson,* 209 F.3d 998, 1003 (7th Cir.2000); *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997). The Bank's argument assumes that potential plaintiffs will "be aware of [their] rights, willing to subject [themselves] to all of the burdens of suing, and able to find an attorney willing to take the case." *Mace,* 109 F.3d at 344; *see also Gammon v. GC Serv., Inc.,* 162 F.R.D. 313, 322 (N.D.Ill.1995) ("class certification is not barred simply because some class members may recover less statutory damages than they would have had they brought their claims individually"); *Burns v. First American Bank,* No. 04 C7682, 2006 WL 3754820, at * 10 (N.D.Ill.Dec.19, 2006) (certifying EFTA class where statutory damages would be $10.80 per class member). In addition to lessening the burdens attendant to bringing a lawsuit (hiring an attorney, attending depositions, taking time from work to attend trial), a class action also mitigates the risk of bringing a lawsuit. An individual who brings an individual claim under the EFTA might be responsible for the costs of bringing the suit in the event the suit fails. The vast majority of plaintiffs are entirely shielded from this risk if the Court certifies a class.

*Flores v. Diamond Bank*, 2008 WL 4861511, *4 (N.D. Ill. Nov. 7, 2008).  This factor thus plainly supports certification for settlement purposes.

> **b.    The Extent And Nature Of Other Pending Class Actions Does Not Present Any Impediment To Certification Of This Settlement Class**

There are no other pending class actions against Defendant asserting the claims here in dispute.  Therefore, this factor supports settlement class certification.

> **c.    This Court Is An Appropriate Forum For Resolution Of The Claims In Dispute**

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties and that personal jurisdiction extends to members of the Class under the Due Process Clause because the notice provided in this case was constitutionally sufficient.  *Shutts*, 472 U.S. at 811-812

> **d.    Manageability**

15

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement class, because the proposal is that there be no trial. *Amchem*, 521 U.S. at 620; *Prudential II*, 148 F.3d at 316 n. 57. Therefore, the Court need not consider manageability as part of its settlement approval calculus.

## V. THE PROPOSED SETTLEMENT EXCEEDS THE STANDARDS FOR JUDICIAL APPROVAL

### A. Final Approval Of The Settlement Is Within The Sound Discretion Of The Court And Is Favored By Strong Judicial Policy

In addition to determining whether the proposed settlement class satisfies the relevant requirements of Fed. R. Civ. P. 23(a) and (b), the Court must separately conclude that the proposed settlement is "fair, reasonable and adequate." *Prudential II*, 148 F.3d at 316. "Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims." *Id.* (citation omitted). A number of well-settled factors guide the Court's fairness review.

However, it is important to note that under the EFTA's statutory damage provision as applied to class actions, the Court has substantial discretion regarding an award of monetary damages. Specifically, 15 U.S.C. § 1693m states in relevant part:

(a) Individual or class action for damages; amount of award

Except as otherwise provided by this section . . ., any person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to such consumer in an amount equal to the sum of—

\*          \*          \*          \*

**(B)  in the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be applicable**

16

(emphasis added).

This statutory grant of judicial discretion significantly informed the damage calculus that was used to negotiate the proposed settlement of this matter.  Specifically, Plaintiff has assumed that absent evidence of intentional non-compliance with the EFTA's disclosure requirements (and there is no such evidence in this case), the appropriate quantum of damages in an EFTA class case is disgorgement of the total surcharges collected, discounted to reflect the risks of litigation.  That calculus is what was used to arrive at the size of the fund reflected in the proposed settlement.

While the approval of a proposed class action settlement is a matter within the sound discretion of the Court, *see Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1971); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971); *Weiss v. Mercedes-Benz of N. America, Inc.*, 899 F.Supp. 1297, 1300 (D.N.J.), *aff'd without op.*, 66 F.3d 314 (3d Cir. 1995), a strong judicial policy favors resolution of litigation short of trial.  *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) ("*GM Trucks*") ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). When a settlement is reached on terms agreeable to all parties, it is to be encouraged.  *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993).

A federal District Court within the Third Circuit has articulated the rationale for this policy as follows:

> [W]hen parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury.  Moreover, the time and expense that precedes the taking of such a risk can be staggering.  This is especially true in complex . . . . litigation.

*Weiss*, 899 F. Supp. at 1300-01.

The Settlement at issue here enjoys a presumption that it is fair and reasonable because it is the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *GM Trucks*, 55 F.3d at 785 ("This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length …. (3) the proponents of the settlement are experienced in similar litigation . . . ."); *see also, Manual for Complex Litigation, Third* § 30.43 (1995). Although a court must independently evaluate a proposed settlement, the court should credit the judgment of experienced counsel in doing so. Conversely, the reviewing court must avoid substituting its image of an "ideal settlement" for the views of the "compromising parties," and must keep in mind the fact that a settlement is, after all, "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Prudential I*, 962 F. Supp. at 534.

Another court has noted:

[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . . . The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*****

Neither the district court nor this court is empowered to re-write the settlement agreed upon by the parties. We may not delete, modify, or substitute certain provisions of the consent decree. Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted. Approval must be given or withheld . . . . In short, the settlement must stand or fall as a whole.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625, 630 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); *see also*, *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'") (*citing Austin v. Pennsylvania Dep't of Corrections*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995)).

Here, Plaintiff's counsel are fully familiar with the facts and law applicable to this litigation and are well acquainted with the prosecution of class actions, generally, and with class-based consumer fraud claims, in particular.  Before entering into the Settlement, Plaintiff's counsel took into account, among other things, the nine factors that the Court of Appeals for the Third Circuit has identified as being relevant to the determination of whether a class settlement is fair, reasonable and adequate.  The evaluation of those factors resulted in Plaintiff's counsel's recommendation that the proposed settlement be accepted as fair, reasonable and adequate as is set forth below.

**B.     The Settlement Is Fair, Reasonable And Adequate**

**1.     The Girsh Factors Support The Settlement**

The Court of Appeals for the Third Circuit has adopted a set of nine factors to be considered in determining whether a proposed settlement is fair, reasonable and adequate:  (1) the complexity and duration of the litigation;  (2)  the reaction of the class to the settlement;  (3) the stage of the proceedings;  (4)  the risks of establishing liability;  (5)  the risks of establishing damages;  (6)  the risks of maintaining a class action;  (7)  the ability of the defendant to withstand a greater judgment;  (8)  the range of reasonableness of the settlement in light of the best recovery;  (9)  the range of reasonableness of the settlement in light of all the attendant risks of the litigation.  *Girsh*, 521 F.2d at 157; *Chambers*, 912 F. Supp. 822, 836-41.

The following application of these factors to the proposed Settlement demonstrates that it is fair, reasonable and adequate and should be approved.

**a.      Continued Litigation Would Be Long, Complex**
**And Expensive**

The Third Circuit and the Eastern District have consistently held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a settlement. *GM Trucks*, 55 F.3d at 812; *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d at 251-52.

The EFTA class action claims at issue are, by definition, complex, and they implicate unsettled areas of applicable law.  One such complexity is that the law changed during the pendency of this litigation via the December 2012 Amendment to the Electronic Funds Transfer Act, Pub. L. No. 112-216, 126 Stat. 1590 (2012) (codified at 15 U.S.C. § 1693b(d)(3)(B)) ("the Amendment"). The Amendment struck from 15 U.S.C. § 1693b the language requiring a physical fee notice to be placed on any ATM which charges transaction fees.  Defendants in other EFTA cases have raised an argument that the Amendment should have retrospective application, eliminating pending lawsuits.  In a case involving similar facts and allegations (and same counsel for Plaintiff), Judge Ellison sitting in the Southern District of Texas denied class certification and dismissed the action, finding that the Amendment applied retroactively and precluded all claims that had not received final judgment before the enactment of the Amendment.  *See* Mem. and Order (Dkt. 77), *Mabary v. Home Town Bank, N.A.*, 4:10-cv-3936 (S.D. Tex. Mar. 28, 2013).  That order is currently being appealed to the Fifth Circuit. *See Mabary v. Home Town Bank*, No. 13-20211 (5th Cir. filed April 17, 2013).  Though this issue is not contested in this case because settlement was reached before the Amendment, it represents a significant potential complexity were the parties to litigate.

The Settlement, on the other hand, permits a prompt resolution of the claims at issue, in a manner that is fair, reasonable and adequate to the Class, while at the same serving the Congressional purpose of enforcing ATM fee disclosure.

Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *In re Chambers Development Securities Litigation*, 912 F. Supp. 822, 837 (W.D. Pa. 1995); *see also TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982). Given the prospects for significant discovery, abundant motion practice, a jury trial and probable appeal process, as well as the substantial risks involved, a settlement at this time is beneficial to the Class. *In re First Commodity Corp. of Boston Customer Accounts Litig.*, 119 F.R.D. 301, 314 (D. Mass. 1987).

This factor thus plainly weighs in favor of approval of the proposed Settlement.

**b.    The Reaction Of The Class To The Settlement Has Been Favorable**

The Third Circuit and Eastern District have held that the response of the class to notice of a proposed settlement can be a significant factor under the *Girsh* paradigm: "The reaction of the class is perhaps the most significant factor to be weighed in considering its [the settlement's] adequacy." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 294 (E.D. Pa. 2003). "[T] the fact that the settlement is entirely uncontested is considered evidence of its fairness." *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d at 252. Here, after adequate notice consistent with the Court's directive in the Preliminary Approval Order, there has been no objection to the Settlement and no request for exclusion from the Settlement. This fact strongly recommends final approval of the Settlement.

**c.    Plaintiff Is Able To Make An Informed Evaluation**

**Of The Merit Of The Proposed Settlement**

The stage of the proceedings and the amount of investigation and/or discovery completed is another factor considered in determining the fairness, reasonableness and adequacy of the settlement. *GM Trucks*, 55 F.3d at 785. This factor "captures the degree of case development that class counsel have accomplished prior to the settlement." *Id.* at 813. "Through this lens," the Court of Appeals for the Third Circuit has written, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id.*

In this litigation, Plaintiff did not need to pursue extensive formal discovery to be in a position to evaluate the merit of the proposed Settlement. In fact, it is well-settled that so-called formal discovery does not warrant talismanic significance. Courts evaluating the fairness and reasonableness of class settlements have routinely held that effective litigation that yields an expeditious and favorable result for the class should be encouraged.

The Third Circuit has commented on this factor as follows:

> The objectors are correct that the Settlement was reached early in the litigation, with discovery itself at an early stage. However, the merits of the liability case against Cendant were fairly clear . . . . Given the foregoing, it is unclear what depositions and interrogatories (with the requisite motions to compel) would have added to the liability considerations . . . .
>
> *            *            *
>
> Therefore, although this litigation was settled at an early stage, because of the nature of the case Lead Plaintiff had an excellent idea of the merits of its case against Cendant insofar as liability was concerned at the time of settlement . . . .

*Id.* 264 F.3d at 236; *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 211 (5th Cir. 1981) ("[W]e are not compelled to hold that formal discovery was a necessary ticket to the bargaining table. Because the plaintiffs did have access to information, this case cannot be characterized as an instance of the unscrupulous leading the blind."); *Bowling v. Pfizer*, 143

F.R.D. 141, 161 (S.D. Ohio 1992) ("We can imagine an inadequate settlement with much discovery done;  similarly, we can envision an outstanding settlement with little discovery done."); *In re Jiffy Lube Securities Litigation*, 927 F.2d 155 (4th Cir. 1991) (plaintiffs were sufficiently informed about the strength of the case as a result of information obtained through informal discovery); *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (approving settlement over objection that not enough discovery had occurred because plaintiffs were adequately informed despite fact that "very little formal discovery was conducted and that there is no voluminous record in this case.").

Here, Plaintiff and Class Counsel possessed sufficient information to conclude that not only is the proposed Settlement fair, reasonable and adequate, but it also serves the Congressional purposes reflected in the EFTA.  The proposed Settlement represents a responsible resolution of this litigation.

This factor weighs in favor of approval of the proposed Settlement.

### d.    Plaintiff Faced Considerable Risk In Establishing Liability

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court should balance the risks of establishing liability against the benefits afforded by the Settlement, and the immediacy and certainty of an adequate recovery against the risks of continuing litigation.  *Girsh*, 521 F.2d at 157; *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 789 F.2d 35 (2d Cir. 1986).

As one court has noted, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."  *State of West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir.), *cert. denied*, 404 U.S. 871 (1971); *see also Bell Atlantic Corp.*, 2 F.3d at 1313 ("Even if plaintiffs hoped to secure a large

damage award, this would have to be drastically discounted by the improbability of their success on the merits . . . .").

In this instance, the risk of litigation is more than just hypothetical.  While Class Counsel continue to believe that Plaintiff's statutory claims are meritorious, Plaintiff and the Class face real risks if this litigation continues. [7]  Defendant has asserted various affirmative defenses to Plaintiff's claims.

Thus, this factor strongly favors the proposed settlement.

### e.      Plaintiff Faces Considerable Risk In Establishing A Sustainable Statutory Damage Award

If Plaintiff would establish liability on the claims at issue, the Court would have significant discretion regarding the quantum of damages to be awarded on a class basis, as is discussed above.  Therefore, because the award of damages would be largely controlled by the Court, this factor is neutral.

### f.      The Risks Of Maintaining A Certified Class Through Trial

Plaintiff also faces the risk that the Court might perceive insurmountable difficulties in managing this case as a class action at trial.  As required by *Amchem*, 521 U.S. 591, this Court must fully analyze whether Rule 23 has been satisfied in this case, with the exception of the manageability inquiry, which *Amchem* holds is irrelevant because the proposal is that there be no trial.  *Amchem*, 521 U.S. at 620.

Defendant would challenge certification if the case were to be litigated, and might appeal certification, should it be granted.  That collateral challenge would prolong the litigation and increase the costs of adjudication and further burden the judicial system.  Moreover, under Rule

---

[7] Assuming *arguendo* that the issue of retroactivity of the Amendment to EFTA was litigated and Plaintiff lost, the class would lose any chance of recovery.

23, a class may be decertified at any time during the litigation.  As one court has observed in

approving a class action settlement:

> Indeed, the Court recognized that its class certification order was subject to
> alteration or amendment before the decision on the merits.  'To paraphrase
> Benjamin Franklin, plaintiffs now have their class action, the question is can they
> keep it.'

*In re Domestic Air Transp. Antitrust Litigation*, 148 F.R.D. 297, 317 (N.D. Ga. 1993) (internal

citations omitted); *see also Perry v. Fleet Boston*, 229 F.R.D. 105, 116 (E.D. Pa. 2005) ("What

the district court giveth, the district court may take away:  the court may decertify or modify a

class at any time during the litigation should the class prove to be unmanageable.")

Thus, the risk faced by the possibility of decertification favors the proposed settlement.

### g.    Defendant's Ability To Withstand A Greater Judgment

Because the Court has significant discretion with respect to any damage award, this factor

is neutral.

### h.    Reasonableness Of The Settlement In Light Of The Best Possible Recovery And All Attendant Risks Of Litigation

The last two *Girsh* factors are the reasonableness of the settlement in light of (i) the best

recovery, and (ii) all the attendant risks of the litigation.  Courts have had regular occasion to

opine on these specific *Girsh* factors.  One of the most comprehensive analyses was set forth in

*Lazy Oil Co. v. Witco Corporation, et al.*, 95 F. Supp.2d 290, 339 (W.D. Pa. 1997), wherein

Judge McLaughlin stated:

> The settlement amount here represents a percentage of Plaintiffs' experts'
> damages estimates that is well within the range typically approved by courts in
> passing on reasonableness.  *See e.g., Erie Forge & Steel, Inc. v. Cyprus Minerals
> Co.,* Civil Action No. 94-404 (W.D. Pa. December 23, 1996)(approving
> settlement of $3.6 Million where plaintiffs' expert estimated damages at $33
> million); *Fox v. Integra Financial Corp.,* Civil Action No. 90-1504 (W.D. Pa.
> July 9, 1996)(approving settlement of $6.5 million where plaintiffs' best estimate
> of provable damages was $33 million); *In re Four Seasons Sec. Litig.,* 58 F.R.D.

19, 36-37 (W.D. Okla. 1972)($8 million settlement approved, although claims exceeded $100 million); *Cagan v. Anchor Savings Bank FSB,* [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) 95,324 at 96,559, 1990 WL 73423 at * 12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million dollar settlement over objections that `best possible recovery would be approximately $121 million"); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D.Fla. 1988) ("The mere fact that the proposed settlement of $.20 a share is a small fraction of the desired recovery of $3.50 a share is not indicative of an inadequate compromise."), *aff'd* 899 F.2d 21 (11th Cir. 1990).

In light of the well-recognized risks faced by litigants in proving liability and damages in cases of this type, courts have determined that a settlement can be approved even if benefits amount to a small percentage of the recovery sought. In *Detroit v. Grinell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974), *impliedly overruled in non-relevant part by Missouri v. Jenkins,* 491 U.S. 274 (1989), the Second Circuit stated: `The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.' And, `there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.' 495 F.2d at 455 n.2.

Consequently, class settlements involving far smaller percentage recoveries have been approved. *See, e.g., Weinberger v. Kendrick,* 698 F.2d at 65 ($2.84 million settlement upheld which, because of legal difficulties amounted to 'only a negligible percentage of the losses suffered by the class,' which were estimated at between $250 million and $1 billion); *Fisher Bros., Inc. v. Mueller Brass Co.,* 630 F.Supp. 493, 499 (E.D. Pa. 1985)(approving settlement of 0.2% of sales; *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. at 542 (settlement of 5.7% of total damages); *Cagan v. Anchor Savings Bank FSB, supra.* (settlement of $2.3 million where estimated damages were $121 million); *Mersay v. First Republic Corp. of America* [1967-1969 Transfer Binder] Fed. Sec. L. Rep. (CCH) 92,304 at 97,443 (S.D.N.Y. 1968)(5-10%); *In re Four Seasons Securities Litig.,* 58 F.R.D. at 36-37 (settlement of less than 8% of estimated damages); *Bagel Inn, Inc.* v. *All Star Dairies,* 1982-1 Trade Cases (CCH) 64,512, 1981 WL 2185 at * 3 (D.N.J. 1981)(settlement of 8% of potential damages); *Feder v. Harrington,* 58 F.R.D. 171, 176 (S.D.N.Y. 1972)(Court approved settlement of 16% of 'realistic damages').

On appeal, the Third Circuit readily endorsed this analysis, stating:

From the objectors' point of view, our opinion should be devoted largely to a merits analysis of their objections to the settlement, measured by the standards outlined in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). However, we dispose of that aspect of the case summarily, concluding that the *Girsh* factors are easily met and that the District Court did not abuse its discretion in approving the settlement . . . .

\*        \*        \*

> We note specifically that the plaintiffs faced a not insignificant risk of losing a
> summary judgment motion if this case was not settled; of the possible exclusion
> of their damage experts following a *Daubert* hearing; and of an adverse verdict if
> the case reached trial . . . .

166 F.3d 581, 584, 588 (3d Cir. 1999) (emphasis added).

As a court sitting in the Eastern District of Pennsylvania noted in evaluating a settlement

wherein the relief being offered to the class represented a significant discount from the low end

of FCRA's statutory damages provisions (*i.e.* $100 per transaction):

> The risks of litigation are particularly weighty here, on the issues of both liability
> and damages.  Further complicating matters is the fact that "no reported class
> action cases have ever been brought or classes certified under the theory [used by
> Plaintiffs in this case]." (internal citation omitted)  The Court concludes that,
> given the circumstances, the settlement is within the range of reasonableness in
> light of the attendant risks of litigation.

*Perry v. Fleet Boston*, 229 F.R.D. at 117.

As stated above, Defendant has agreed to create a settlement fund in the amount of

$87,747.00 to be disseminated on a *pro rata* basis to every Participating Class Member who

submitted a claim after the dissemination of notice, with any individual Participating Class

Member's share being capped at $100.00.  There are a total of 58,498 transactions at issue,

resulting in $144,589.00 in ATM fees being collected by Defendant.  While the settlement

amount represents a discount relative to the best possible recovery, it is a better ratio than most

of the settlements described in the *Lazy Oil* opinion.  Defendant has also agreed that 50% of any

unclaimed amount of the Settlement Fund will be donated, on a *cy pres* basis, in equal amounts,

to: 1) the Boys' and Girls' Clubs of America; and 2) Girls Hope of Pittsburgh.  Defendant has

agreed not to oppose Class Counsel's application for attorneys' fees and expenses, in an amount

27

up to thirty-five percent (35%) of the Settlement Fund, as well as a reasonable Plaintiff service award.

Plaintiff respectfully suggests that the proposed Settlement is fair, reasonable and adequate and represents a responsible and appropriate compromise of this litigation.

## VI.   **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter the Proposed Final Approval Order and Proposed Final Judgment, approving the proposed Settlement.

Respectfully Submitted,

/s/ Bruce Carlson
R. Bruce Carlson, Esquire (PA56657)
bcarlson@carlsonlynch.com
Gary F. Lynch, Esquire (PA56887)
glynch@carlsonlynch.com
CARLSON LYNCH LTD
115 Federal Street, Suite 210
Pittsburgh, PA 15212
(p) (412) 322-9243
(f) (412) 231-0246

Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's electronic filing system on this 23th day of August, 2013.

<u>/s/ R. Bruce Carlson</u>
R. Bruce Carlson