IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KURT HUCKABEE, : | |
| individually and on behalf of all others : | |
| similarly situated, : | |
|       Plaintiff, : | CIVIL ACTION |
|     v. : | |
| : | |
| SOVEREIGN BANK, : | |
|       Defendant. : | No. 11-7657 |

**ORDER on FINAL APPROVAL of SETTLEMENT and ATTORNEYS' FEES**

**AND NOW**, this 11th day of October, 2013, upon consideration of Plaintiff's Motion for Final Approval of Class Action Settlement (Docket No. 28), Defendant's Responses (Docket No. 31, 32) and Plaintiff's Motion for Attorneys' Fees (Docket Nos. 29, 30), and following a hearing on October 8, 2013, it is hereby **ORDERED** that Plaintiff's Motions (Docket Nos. 28, 29, 30) are **GRANTED** as follows.

**I.      BACKGROUND**

In this putative class action, Kurt Huckabee filed suit against Sovereign Bank, alleging that it violated the Electronic Funds Transfer Act by not posting "prominent and conspicuous" fee notices near certain ATMs.  After negotiations, Mr. Huckabee and Sovereign Bank reached a proposed settlement that would resolve this case.  Mr. Huckabee sought and received preliminary approval of the settlement.  Mr. Huckabee now seeks final approval of the Proposed Settlement Agreement (the "Settlement Agreement"), certification of a settlement class, and attorneys' fees. Sovereign Bank does not oppose Mr. Huckabee's Motions.

**II.     FINAL APPROVAL**

    **A.     Class Findings**

For purposes of the settlement of the claims against Sovereign Bank – and only for such purposes, and certainly without an adjudication of the merits – the Court finds that the requirements of the United States Constitution, the Federal Rules of Civil Procedure, the Rules of the Court and any other applicable law have been met as far as the proposed settlement is concerned,[1] in that:

    **1.**     The Settlement Class Members, as defined in Section B below, are ascertainable from objective criteria, and the Settlement Class Members are so numerous that their joinder before the Court would be impracticable.

    **2.**     For purposes of settlement, the commonality requirement of Federal Rule of Civil Procedure 23(a) is satisfied insofar as Mr. Huckabee has alleged one or more questions of fact and law common to the Settlement Class, including whether the fee notices in question were "prominent and conspicuous."

    **3.**     Based on Mr. Huckabee's allegation that he is a non-bank customer who used a Sovereign Bank ATM in question and, thus, paid a fee, the Court finds that Mr. Huckabee's claims are typical of the claims of the Settlement Class members. The claims of Mr.

---

[1]   Rule 23(a) requires that the parties moving for class certification demonstrate the following:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Even if the requirements of Rule 23(a) are met, the parties must also show that the action can be maintained under at least one of the subsections of Rule 23(b).

Huckabee and absent class members rely on the same legal theories and arise from the same alleged conduct by Sovereign Bank, namely, the posting of fee notices at various ATMs.

  **4.** The Court finds that Mr. Huckabee will fairly and adequately protect the interests of the Settlement Class, in that (i) his interests are consistent with those of the Settlement Class members; (ii) there appear to be no conflicts between Mr. Huckabee and other Settlement Class members; (iii) Mr. Huckabee and the Settlement Class members are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class action cases similar to this one.

  **5.** The Court finds that, for this settlement's purposes, questions of law or fact common to members of the Settlement Class predominate over questions affecting only individual members of the Settlement Class, under Rule 23(b)(3), and that a class action resolution in the manner proposed in the Settlement Agreement would be superior to other available methods for a fair and efficient adjudication of the Litigation.  In making these findings, the Court has considered, among other factors, (i) the interest of Settlement Class members in individually controlling the prosecution or defense of separate actions; (ii) the impracticality or inefficiency of prosecuting or defending separate actions; (iii) the extent and nature of any litigation concerning these claims already commenced; and (iv) the desirability of concentrating the litigation of the claims in a particular forum.

  **6**. The Defendant has timely filed notification of this settlement with the appropriate federal officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.  *See* Docket No. 32. The Court has reviewed such notification and accompanying materials, and finds that the Defendant's notification complies fully with the applicable requirements of CAFA.

### B. Class Certification for Settlement Purposes Only

1. Based on the findings set forth in Section A above, the Court certifies the Settlement Class for settlement purposes under Fed. R. Civ. P. 23(b)(3). For purposes of this settlement only, the Settlement Class is defined as follows:

> All persons who were not banking customers of Sovereign Bank and who were charged or assessed any transaction fee, including ay "terminal owner fee," surcharge or ATM transaction fee of any kind, in connection with any electronic fund transfer or balance inquiry at any of the ATMs at issue[1] between December 15, 2010 and March 31, 2012.

2. The Court concludes that, for the sole purpose of settlement, and without an adjudication on the merits, the Class is sufficiently well-defined and cohesive to merit final approval. The Class shall be modified as necessary.

### C. Notice

The Class Notice attached as Exhibits B1 and B2 to Exhibit 1 to the Amended Motion for Preliminary Approval (Docket No. 20) was approved, with corrections specified at the preliminary approval hearing. Notice was posted at the ATMs in question from April 10, 2013 through May 25, 2013.[2] In addition, Plaintiff's Counsel posted notice of this action on his firm's website, and that notice was still available on line as of the date of the Final Fairness Hearing.

---

[1] The 14 ATMs at issue are listed in the Settlement Agreement, attached as Exhibit 1 to Plaintiff's Motion for Preliminary Approval (Docket No. 20), and are all located in Pennsylvania.

[2] At the hearing on the Motion for Preliminary Approval, the Court questioned counsel about the lack of publication notice in the proposed notice plan. After reviewing supplemental materials submitted by counsel regarding the cost of publishing notice in local newspapers in communities surrounding the ATMs in question, the Court concluded that the cost of such publication notice would outweigh the potential benefits of publication notice.

D. **Findings Regarding Proposed Settlement**[3]

1. The Court accepts the good faith representations of counsel that the proposed settlement was reached only after arm's-length negotiations by counsel. The total settlement amount is $87,747 to be disseminated on a *pro rata* basis to every Participating Class Member who submitted a timely claim, with any individual Participating Class Member's share being capped at $100.00.[4] Fifty percent (50%) of any unclaimed amount of the Settlement Fund will be donated, on a *cy pres* basis,[5] in equal amounts to the Boys & Girls Clubs of America and Girls Hope of Pittsburgh.[6]

---

[3] The Third Circuit Court of Appeals has set forth nine factors to be considered when determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation…

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations and punctuation marks omitted).

[4] There are a total of 58,498 ATM transactions at issue, resulting in $144,589.00 in ATM fees being collected by Sovereign Bank (or about $2.50 per transaction).

[5] In *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013), the Third Circuit Court of Appeals addressed the issue of *cy pres* distributions from settlement funds. The court in that case cautioned that "[b]arring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds." *Id.* at 174. Here, the ultimate *cy pres* distribution will be a fairly large percentage of the total settlement funds as compared to the relatively small amount paid out to class members. However, this is not because the settlement is structured such that some claimants will not get full relief while money that could compensate them is given away to charity. Rather this lopsided distribution of funds is due to the very low number of submitted claims. Indeed, the claimants here, who are entitled to a maximum recovery of $100 under the settlement, will almost certainly be receiving well more than their actual damages (assuming that the six class members who have filed claims have not used the ATMs in question more than 40 times each during the approximately 15-month class period). Without the *cy pres* component of the settlement, the settlement amount paid by Sovereign Bank would be so low that it would be highly unlikely to deter any future conduct violating the EFTA. On the other hand, distributing the extra funds to the very small number of claimants would result in an unwarranted and unfair windfall to those lucky few. *See Hughes v. Kore of Indiana Enters., Inc.*, No. 13-8018, 2013 WL 4805600, at *5 (7th Cir. Sept. 10, 2013) (recognizing, in a similar EFTA case, that "the amount of

**2.** As to the complexity, expense, and likely duration of the litigation, as well as the risks of establishing liability, the law governing the EFTA is largely unsettled in this circuit, particularly with regard to the "prominent and conspicuous" requirement. Moreover, after the settlement in this case was reached, Congress repealed the section of the statute requiring "prominent and conspicuous" notice. Continued litigation, then, would include at the very least motion practice regarding whether the amendment of the statute applies retroactively, likely leading to appellate practice, prolonging this litigation, and creating a risk that the class would not recover any damages. These factors weigh in favor of settlement.

**3.** No class members objected or opted out of the settlement.[7] The reaction of the class, then, weighs in favor of settlement.

**4.** The parties engaged in limited informal discovery prior to settling this case. However, given the discrete issues involved here, the Court finds that even that minimal amount of discovery was enough for the parties to make a reasonable assessment of the case for settlement purposes.

**5.** Courts have discretion as to the amount of damages to be awarded in an EFTA case. *See* 15 U.S.C. § 1693m. Predicting the amount of damages that a court would award in such an action is therefore somewhat speculative. Because there was no evidence of

---

damages that each class member can expect to recover is probably too small even to warrant the bother, slight as it may be, of submitting a proof of claim in the class action proceeding" and positing that "[s]ince distribution of damages to the class members would provide no meaningful relief, the best solution may be what is called . . . a 'cy pres' decree"). Thus, the Court will approve the *cy pres* component of this settlement.

[6] At the Final Fairness Hearing, Plaintiff's counsel remarked that both of the charities who will receive a share of the settlement funds in this case are involved to at least some degree in providing financial education to young people.

[7] While no class members objected, only six class members actually filed claims. Counsel represented at oral argument that this response is typical for this type of action.

recklessness or worse in this matter, Plaintiff's counsel posited that disgorgement of fees would be a likely measure of recovery. Sovereign Bank collected $144,589.00 in ATM fees during the class period. The settlement amount arrived at in this case is the fees discounted to account for the risk the class would face in continuing the litigation. Thus, as to the risks of establishing damages, the range of reasonableness of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation, all of these *Girsh* factors weigh in favor of the settlement.

    **6.** With respect to the risk of maintaining the class action through trial, the Third Circuit Court of Appeals has recognized that "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 321 (3d Cir. 1998).

    **7.** Plaintiff concedes that Sovereign Bank would be able to withstand a greater judgment. This factor, then, weighs against settlement.

    **8.** The *Girsh* factors viewed as a whole weigh in favor of settlement. Thus, the Court finds that the settlement in this case is fair and reasonable.

## III.     ATTORNEYS' FEES[8] AND CLASS REPRESENTATIVE AWARD

### A.     Attorneys' Fees

**1.**     Plaintiff's counsel seek an attorneys' fees award of 35% of the settlement, or $30,711.45.

**2.**     Plaintiff's counsel have spent 71.5 hours on this matter, resulting in a lodestar amount of $29,648.93 plus costs of $2,155.18.[9]  Thus, the requested award in this case amounts to slightly less than the lodestar amount plus costs.  The lodestar cross check, then, weighs in favor of approving the requested fees.

**3.**     No class members have objected to the requested fees or to the terms of the settlement.

**4.**     The Court finds that Plaintiff's counsel has extensive experience and, consequently, skill in this type of litigation.

---

[8] The Third Circuit Court of Appeals has held that district courts "must consider" ten factors "[i]n determining what constitutes a reasonable percentage fee award[.]" *In re Diet Drugs,* 582 F.3d 524, 541 (3d Cir. 2009).  The factors are:
   (1) the size of the fund created and the number of beneficiaries;
   (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
   (3) the skill and efficiency of the attorneys involved;
   (4) the complexity and duration of the litigation;
   (5) the risk of nonpayment;
   (6) the amount of time devoted to the case by plaintiffs' counsel;
   (7) the awards in similar cases;
   (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;
   (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and
   (10) any innovative terms of settlement.
*Id.* (citing *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n. 1 (3d Cir. 2000), and *In re Prudential Ins. Co. Am. Sales Practice Litig. Against Agent Actions,* 148 F.3d 283, 336–40 (3d Cir. 1998)).

[9] The hourly rates of the two partners on the case are $500.  The rates for associates range from $225 to $250, and the rate for the sole paralegal on the matter is $75.  The Court finds that each of these rates is reasonable, based on the attorneys' skill and experience in this type of litigation.  Likewise, the total amount of time billed on this matter was reasonable.

8

5. The risk of nonpayment in a matter such as this is high even though Sovereign Bank could certainly withstand a greater judgment, given the risks cited above in establishing liability.

6. In similar cases, fee awards ranging from 30-38% have been awarded. *See* Pl.'s Amended Motion for Attorneys' Fees, Docket No. 30, chart at p. 4-5.

7. Although little discovery was taken in this case, counsel did not rely on the investigations of others, such as government agencies.

8. While the size of the fund created here is relatively small, the number of beneficiaries is decidedly few (at least without taking into account the *cy pres* distribution), the settlement contains no innovative terms, and the litigation settled very early in the life of the case, the requested fees are modest and commensurate to the impact of this case.

B. **Incentive Award**

1. The incentive award[10] proposed for Mr. Huckabee, the sole named plaintiff, is in line with awards given to named plaintiffs in class action litigation in this circuit and adequately compensates him for the time and effort he spent in bringing and participating in this case.[11]

---

[10] Incentive awards "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation.'" *Bredbenner v. Liberty Travel,* Civil Action No. 09-905, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) (quotation omitted). Incentive awards also "'reward the public service' of contributing to the enforcement of mandatory laws." *Id.* (quoting *In re Cendant,* 232 F.Supp.2d 327, 344 (D.N.J. 2002)).

[11] *See, e.g., Milliron v. T-Mobile USA, Inc.*, Civil Action No. 08-4149, 2009 WL 3345762, at *23 (D.N.J. Sept. 14, 2009) (approving $1,000 incentive award for class representative); *Palamara v. Kings Family Restaurant*, Civil Action No. 07-317, 2008 WL 1818453, at *6 (W.D. Pa. Apr. 22, 2008) (approving $2,000 incentive award); *Klingensmith v. Max & Erma's Restaurant*, Civil Action No. 07-0318, 2007 WL 3118505, at *5 n.13 (W.D. Pa. Oct. 23, 2007) ("[T]he class representative's award of $2,500 in this action raises no 'red flag' when it is properly considered as a necessary incentive to aid in enforcement of legislation, and as compensation to an individual willing to contribute her name and time to this purpose.").

## IV.  CONCLUSION

It is hereby **ORDERED** that:

1. The Settlement Agreement submitted by the parties is finally approved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure as fair, reasonable and adequate and in the best interests of the Class and the parties are directed to consummate the Agreement in accordance with its terms.

2. Consistent with the specific terms of the Settlement Agreement, Sovereign Bank is directed to pay Class Counsel attorneys' fees and costs of $30,711.45 and Plaintiff an incentive payment of $1,500.00.

3. This action is hereby dismissed on the merits, with prejudice and without costs.

4. The Court finds, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay, and directs the Clerk to enter final judgment and then close this case for all purposes, including statistics.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE